WILL OF MORAWETZ: NOHL, Guardian *ad litem,* Appellant, vs. FIRST WISCONSIN TRUST COMPANY, Trustee, and others, Respondents.

*March 5—April 3, 1934.*

596

For the appellant there was a brief by *Leo F. Nohl,* guardian *ad litem,* and *Nohl, Nohl, Petrie & Blume* of counsel, and oral argument by *Earl L. Meixner* and *Nelson F. Petrie,* all of Milwaukee.

*Carl H. Juergens* of Milwaukee, for the respondent Brucker.

ROSENBERRY, C. J. Summarized briefly the claim of the appellant guardian *ad litem* is that by the use of the words "unto her issue" the testator intended a distribution *per*

*capita* for the reason that at the time of the testator's death the rule of the common law embodied in sec. 370.01 (8), Stats., was that the word "issue" as applied to descent of estates should be construed to include all the lawful lineal descendants of the ancestor; that the law of the place at the time of the execution of the will is controlling and that subsequent changes or tendencies in the law should for that reason be ignored; that at the time of the making of the will the law would have made the distribution *per capita*. It is the contention of the respondents that while the term "issue" should be given its statutory meaning for the purpose of determining whether or not Rose Brucker died without issue, the rule does not determine how the issue shall take. Both parties agree that the paramount consideration is the intention of the testator. They disagree as to what that intention was as disclosed by the will and the surrounding circumstances. Counsel for the guardian *ad litem* argue that while at the present time the weight of authority is that under the circumstances of this case the issue should take *per stirpes,* such was not the law at the time of the making of the will or of the death of the testator. If the position of counsel is correct, the argument would seem to prove too much. If there has been such a change as counsel contends, it has no doubt been due to a growing conviction that to hold otherwise would defeat rather than give effect to the intention of testators.

At the time of the execution of the will, sec. 2270, R. S. 1878, provided for the descent of the title to real property where the owner died intestate. The same rule applies to the distribution of personal property. Under the facts applicable to this case it is provided:

"They (lands) shall descend, subject to his debts, except as provided in the next section, in the manner following:

"(1) In equal shares to his children, and to the lawful issue of any deceased child, by right of representation."

While it is true that the statute applies only to intestate property, it is significant as indicating the disposition that is made of property in the absence of a will. In some jurisdictions it is held that where the will itself does not prescribe how the property shall descend, it will descend according to the law until it finds a resting place. There is a division of authority as to whether or not, where a devise is to "issue," the issue take *per capita* or *per stirpes*. For a collection of the cases, see note 16 A. L. R. 15.

In *Will of Scholl,* 100 Wis. 650, at 659, 76 N. W. 616, the word "children" was used instead of issue, and it was there held that it was the intent of the testator that "each of the seven shares bequeathed to the children of deceased brothers and sisters to go in the line of descent till it all reached a resting place, however remote, on a basis of absolute equality between the members of each class, the children of a deceased member of one class forming a new class to take *per stirpes* the share of such deceased member."

While the Massachusetts cases are not cited in the opinion to this proposition, the rule of those cases is adopted. While, as indicated in the note referred to, the general rule originally was that under such circumstances the distribution was *per capita* instead of *per stirpes,* a very slight circumstance is sufficient to overcome the rule. See *In re Farmers Loan & Trust Co.* 213 N. Y. 168, 107 N. E. 340. The fact that such circumstances have often operated that way is no doubt what led counsel for the guardian *ad litem* to the concession that the rule of law had changed since the date of the testator's death in 1891. We adhere to the decision in the *Scholl Case* and adopt the logic of the Massachusetts cases, which result in an affirmance of the judgment.

*By the Court.*—Judgment affirmed.